## JENNIE FRAZIER, Respondent, v. KATIE E. GROB Appellant.

### St. Louis Court of Appeals, March 7, 1916.

1. **LIBEL AND SLANDER: Word Actionable Per Se.** To state that a person is a "cock-sucker" is to accuse him of committing the felony denounced by Laws of 1911, p. 198, namely, the commission of the "detestable and abominable crime against nature committed . . . with the mouth," and hence is actionable *per se*.

2. ————: ————: **Pleading: Colloquium and innuendo.** Where, in an action for slander, the petition alleged that defendant stated plaintiff was a "cock-sucker," it was not necessary that the petition explain the slanderous charge by *colloquium* or *innuendo*.

3. ————: **Construction of Language Used.** Words charged to have been slanderous are to be given their ordinary meaning, and, if possible, an innocent meaning will be given them.

4. ————: **Elements of Offense: Publication.** Without proof of publication of the slanderous language, no recovery can be had.

5. ————: **Trial Practice: Form of Questions.** In an action for slander, it is improper to ask a witness who had testified that she heard defendant call plaintiff vile names, whether she had heard plaintiff's testimony and whether the language used by defendant was as plaintiff testified it was.

6. ————: **Publication: Sufficiency of Evidence.** In an action for slander, evidence *held* sufficient to warrant submission to the jury of the question whether the slanderous words were heard by any person other than plaintiff and defendant.

7. ————: ————: **Instructions.** In an action for slander by stating that plaintiff was a "cock-sucker," an instruction that if the jury found that defendant, "addressing plaintiff, in the presence and hearing of other persons, spoke of and concerning plaintiff, words substantially as follows [setting out the words used in the petition], plaintiff is entitled to recover," and an instruction which made no reference to the necessity of finding that the words charged must have been uttered in the presence and hearing of others, were erroneous as authorizing a recovery irrespective of whether other persons heard the words and understood that, by them, defendant meant to charge plaintiff with being guilty of the practice or act charged.

8. **APPELLATE PRACTICE: Trial Practice: Failure to Rule: Harmless Error.** The failure of the trial court to rule on a motion to strike out evidence is not reversible error, where the motion was untenable.

Frazier v. Grob.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

REVERSED AND REMANDED.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.* for appellant.

(1) The petition contains neither colloquium nor innuendo by which the language charged to be slanderous is explained and shown to charge the plaintiff with the commission of a crime. The petition is therefore insufficient to sustain the verdict and judgment. The language charged to have been used by the defendant in its ordinary sense and without explanation did not charge the plaintiff with the commission of any crime. Christal v. Craig, 80 Mo. 367, 372; Krup v. Corley, 95 Mo. App. 640, 650; Boyce v. Aubuchon, 43 Mo. App. 315, 323; Cook v. Pulitzer Publishing Co., 241 Mo. 326. In slander the words charged to have been spoken should be understood and construed in their most innocent sense unless there are averments in the petition giving them other and sinister meaning. Kunz v. Hartwig, 151 Mo. App. 94, 103. (2) Defendant's peremptory instruction, asked at the close of all the evidence, should have been given, because there was a total failure of proof of publication of the alleged slander. Without proof of publication no recovery can be had. Traylor v. White, 185 Mo. App. 325; Sullivan v. Sullivan, 54 Ill. App. 435; Sheffil v. Van Deusen, 13 Gray (Mass) 304. (3) The first instruction given for the plaintiff is erroneous, because it ignores the question of publication and authorizes a finding for the plaintiff in the event the jury find the words charged spoken in the hearing of other persons, irrespective of whether such other persons heard and apprehended them. This instruction also attempted to cover the whole of the plaintiff's case and being erroneous, the judgment must on that account be reversed. Traylor v. White, 185 Mo. App. 325, 331; Wilks v. Railroad, 159 Mo. App. 711; Wojtylak v. Kansas & Texas Coal Co., 188 Mo. 260; Ghio v. Schaper Bros. Merc. Co., 180 Mo. App. 286. (4) The failure of the court to rule on the de-

fendant's motion to strike out the portion of the plaintiff's testimony complained of was also error. The testimony was clearly not responsive to the question and indicated a desire on the part of the plaintiff to make sympathy for herself with the jury, and not only should the testimony have been stricken out, but the plaintiff should have been cautioned regarding the matter by the court. The failure of the court to rule no objections to evidence is reversible error. Stone v. Fry, 178 S. W. 289, 290; Asbury v. Nicklin, 181 Mo. 658; Seafield v. Bohne, 169 Mo. 537. (5) The court also erred in permitting the witness, Mrs. Esther Young, to testify, over the objections of defendant, as to bad language used by the defendant toward her daughter, at a time when the plaintiff was not present. This was not a rebuttal of any of the testimony of the defendant and its purpose was only to inflame the jury aaginst the defendant. Kennedy v. Holladay, 25 Mo. App. 503, 513. (6) The verdict was clearly the result of passion and prejudice on the part of the jury against the defendant and should therefore be set aside by this court. Tucker v. Railroad, 66 Mo. App. 141; Ettlinger v. Kahn, 134 Mo. 492; Empey v. Grand Avenue Cable Co., 45 Mo. App. 422.

*Rodgers & Koerner* for respondent.

(1) Neither colloquium nor innuendo is required when the words spoken are slanderous *per se* and their defamatory meaning is apparent. Callaghan v. Ingram, 122 Mo. 355, 366; Sotham v. Telegram Co., 239 Mo. 606, 620; Crandall v. Greaves, 181 Mo. App. 235, 238. The words here charged *per se* impute a felony. Laws of Missouri of 1911, page 198. They also charge unchastity of the lowest kind. (2) The court will take judicial notice of the meaning of words that have a well understood meaning, even though the modesty of lexicographers prevents their defining them in the dictionaries. Edgar v. McCutchen, 9 Mo. 768. (3) There was ample proof of publication. The testimony that the words were spoken in the presence of third parties near enough to hear, is sufficient proof of publication

to require that issue to be submitted to the jury. Cameron v. Cameron, 162 Mo. App. 110, 114; Miller v. Johnson, 79 Ill. 58, 60; Hammond v. Stewart, 72 Ill. App. 512, 513. Where the words are spoken in the language of the locality, it is presumed that they are understood. Newell on Slander and Libel (3 Ed.), p. 922, sec. 920. Where the words can mean but one thing it is unnecessary to show that the persons hearing them understand them. Crandall v. Greaves, 181 Mo. App. 235, 238; Vanloon v. Vanloon, 159 Mo. App. 255, 267; Hammond v. Stewart, 72 Ill. App. 512, 513. In fact it would have been error to show that the persons hearing these words did or did not understand their meaning. Newell on Slander and Libel (3 Ed.), p. 381, sec. 372; Branch v. Publishers, Etc., 222. Mo. 580, 594 et seq.; Callaghan v. Ingram, 122 Mo. 355, 375; Snell v. Snow, 13 Met. (Mass.) 278. Where the meaning of the words is plain it is a question of law for the court whether they are slanderous. 25 Cyc. p. 542. And where their meaning is ambiguous it is for the jury to determine what is meant. Callaghan v. Ingram, 122 Mo. 355, 375. (4) Plaintiff's first instruction does not ignore the question of publication. It expressly requires the jury to find that defendant used the language charged in the presence and hearing of other persons and it is presumed to have been understood. Crandall v. Greaves, 181 Mo. App. 235, 238; Newell on Slander and Libel, p. 922, sec. 920. (5) The failure to rule on defendant's motion to strike out was not error (a) because it is impossible to tell from the motion what defendant wanted stricken out; (b) because there was no evidence of any weight or consequence to which defendant's motion could be held to be addressed. (6) No error was committed in permitting Mrs. Young to testify in rebuttal, (a) because such testimony was not objected to by defendant; (b) because such testimony properly rebutted the testimony given by defendant testifying in her own behalf. (7) The verdict is not excessive. Williamson v. Eckoff, 185 Mo. App. 234; Cook v. Globe Printing Co., 227 Mo. 471.

## ON REHEARING.

PER CURIAM.—Action for damages for slander. The count of the petition upon which this case went to the jury charges that the defendant, on October 23, 1912, at the city of St. Louis, "wrongfully, wilfully and maliciously spoke and uttered of and concerning plaintiff, in the presence and hearing of divers persons, false and defamatory words as follows, to-wit: "You (meaning plaintiff) are a cock-sucker." Charging that defendant's wrongful conduct greatly humiliated plaintiff and caused her shame and mortification and so shocked and affected her nervous system as to render her weak, faint, nervous and sick and that as a direct result she has suffered and will suffer in reputation and mind, plaintiff prays judgment for $5000 actual and $5000 punitive damages. The demand for actual damages was afterwards, by amendment, placed at $2500.

Interposing a general demurrer and that being overruled, defendant filed a general denial.

The trial resulted in a verdict in favor of plaintiff for $1000 actual and $1500 punitive damages. Judgment following, defendant filing her motion for a new trial and in arrest and excepting to the action of the court in overruling these, has duly appealed to our court.

Learned counsel for appellant assign six grounds for a reversal.

First, it is argued that as the petition contains neither colloquium nor innuendo, by which the language charged to be slanderous is explained and shown to charge plaintiff with the commission of a crime, the petition will sustain neither the verdict nor judgment; that the language charged to have been used by the defendant, in its ordinary sense and without explanation, did not charge the plaintiff with the commission of any crime; that in slander the words charged to have been spoken should have been understood and construed in their most innocent sense unless there are

averments in the petition giving them other and sinister meaning.

It is to this claimed defect in the petition that the demurrer and motion in arrest were directed.

By Act approved March 30, 1911 (Laws 1911, page 198), section 4726, Revised Statutes 1909, which before then defined and punished "the crime against nature," was repealed and a new section enacted in lieu thereof which reads: "Every person who shall be convicted of the detestable and abominable crime against nature, committed with mankind or with beast, *with the sexual organs or with the mouth,* shall be punished by imprisonment in the penitentiary not less than two years." The words italicized were interpolated by the amendment, the punishment was changed from imprisonment for the term of ten years to imprisonment for two years, still classifying the offense as a felony.

As originally interpreted by the courts, "the crime against nature" was held to embrace sodomy. Then it was extended by construction to embrace bestiality, and later the statute merely denouncing the commission of "the crime against nature," it was also extended by some courts to include what was designated as "fellation." [See Black's Law Dictionary (2 Ed.), p. 1094, title "Sodomy."] The crime against nature "was deemed of a nature so heinous that the delicacy of the common law would not permit it to be named in the indictment." [See Newell on Slander & Libel (3 Ed.), p. 174, secs. 154-155.] For illustrations of the peculiar offenses covered, see Wharton Criminal Law (11 Ed.), p. 967 et seq.; Honselman v. The People, 168 Ill. 172; State v. Whitmarsh, 26 S. D. 426; Anonymous, 29 Upper Canada Queen's Bench Reports, 456.

This law was before our Supreme Court and construed in State v. Wellman, 253 Mo. 302, 161 S. W. 795, and State v. Katz, not yet officially reported but see 181 S. W. 425.

In the petition before us the pleader specifically sets out the accusation which it is averred defendant made against plaintiff. We hold that this is an accusation of the commission of "the detestable and

abominable crime against nature committed . . . with the mouth," as denounced by the amendatory act recited, and "is as much against nature, in the sense of being unnatural and against the order of nature, as sodomy or any bestial or unnatural copulation that can be conceived." [Honselman v. The People, supra.] To make such an accusation is to charge one with a felony, and is actionable *per se.*

. Nor was it necessary to explain the slanderous charge by colloquium or innuendo. If the pleader undertook by innuendo or colloquium to explain the vile language charged to have been used, he could not possibly convey the idea more clearly or more plainly than conveyed in and by the words themselves. It is true that words used are to be given their ordinary meaning, and if possible we are to put an innocent meaning to them, but it is impossible to contrue the language here charged to have been used in a sense other than that which they ordinarily bear, and no more sinister meaning can be placed upon them by innuendo than the words themselves carry.

In Wolnoth v. Meadows, 5 East 463 (vol. 3, p. 231, Compiled Edition 1845), an action for slander, the slanderous matter consisting of a charge of the commission of the crime against nature, it was argued against the declaration that the innuendous were insufficient. Checking counsel in his argument along that line, Lord EL-LENBOROUGH, the Chief Justice, said: "Consider the case then as if the innuendo were struck out, and attend to the words themselves; whether, when taken altogether, they do not naturally import a charge of this sort." Mr. Justice GROSE said: "We must read the words in the same sense as common people who heard would understand them." Passing judgment on the case, it was held that the words spoken in themselves could mean nothing but to charge plaintiff with some infamous crime. Said the Chief Justice, "Applying our understanding to these words like any common persons, can we give them any other meaning than that which the pleader meant to give them by the innuendo at the conclusion." Mr. Justice LAWRENCE added that

Frazier v. Grob.

he agreed with defendant's counsel that if the words "as laid, would not, in the ordinary understanding of mankind, bear the meaning imputed to them, the inuuendo will not help them.

"In Peake v. Oldham, Cowp. 275-8, Lord MANSFIELD lays down the rule, that 'where words from their general import appear to have been spoken with a view to defame a party, the court ought not to be industrious in putting a construction upon them different from what they bear in the common acceptation and meaning of them.' The argument then goes too far, when it is contended that the words must be such as must necessarily bear a criminal import, and no other, in order to maintain an action upon them. For them, if the words had been a direct charge of an unnatural crime, by using those very words, it might be argued that no action would lie upon them without some explanation of what was meant by an unnatural crime; as it might be said that all crimes are against the order of nature; and so they are in a general sense. But the true question is, whether in the ordinary acceptation of the words, any person can reasonably doubt of their signification. No such doubt can, I think, be entertained in this case, and therefore the declaration is good." And that was the conclusion there arrived at by all the judges of the court of King's Bench.

Our Supreme Court in Edgar v. McCutchen, 9 Mo. 759, held that because the words used are vulgar, it does not follow that they are words of known meaning.

In People v. Williams, 59 Calif. 397, it is held that every one of ordinary intelligence understands what is meant by "the crime against nature." In the case entitled "Anonymous," and heretofore cited, from 29 Upper Canada Q. B. Reports, an action for slander, the charge made was that plaintiff was a "Sodomite." It was held that this expressed plainly what was meant and that an innuendo was unnecessary.

Tested by these rules, we conclude that there was no error in overruling the demurrer or the motion in arrest.

The second point urged by learned counsel for appellant is that defendant's peremptory instruction asked at the close of all the evidence should have been given because there was a total failure of proof of publication of the alleged slander. .

It goes without saying that without proof of publication of the slanderous language no recovery can be had. [Traylor v. White, 185 Mo. App. 325, 170 S. W. 412; Walker v. White, 192 Mo. App. 13, 178 S. W. 254.] In the case at bar plaintiff testified that the offensive language set out in the petition had been uttered in the presence and hearing of her daughter, a young woman seventeen years of age; that at the time the language was said to have been uttered plaintiff and defendant were in the backyards of their premises, which adjoined; that plaintiff and her daughter were within eight or nine feet of where the defendant stood when she uttered the words; that she and her daughter were on one side of the fence dividing the premises; that before defendant made use of these words she called to a lady who was in her yard with her, directing her attention to plaintiff and using the words charged; that there was also present a young girl about fifteen years of age, named Catherine, as also defendant's mother and a boy of about fifteen years of age in the yard with defendant; that defendant spoke in a tone of voice loud enough for all these persons present to hear her. . The daughter of plaintiff was put on the stand by plaintiff and testified that she was standing about three feet from her mother on the occasion mentioned and heard defendant call her mother vile names. She was asked if she had heard her mother testify and if it was the same her mother had testified to when on the witness stand. On defendant's objection that this was not the proper manner of examination of the witness and that she must herself state the language which she had heard used, the court very correctly sustained the objection. The young woman was asked no further questions.

It is true that the lady referred to as being present with defendant when she is said to have used the

language set out in the petition, was asked what she heard and what took place on the occasions referred to, and testified not only that she did not hear defendant use any such language, but that to her knowledge defendant had not used the words specified. Other persons produced by defendant as witnesses as within hearing of the conversation also denied hearing any such expression and defendant herself most emphatically denied having used these words. There was no pretense that any of the persons said to have been present were deficient in hearing.

In Cameron v. Cameron, 162 Mo. App. 110, l. c. 114, 144 S. W. 171, the Kansas City Court of Appeals has said that even when the only party present beside plaintiff and defendant denied having heard the objectionable words, it appearing that that party was not deficient in hearing, it is to be assumed that he must have heard what was said and that where plaintiff had testified positively to the utterance of these words, this was substantial evidence of the publication and sufficient to raise an issue for the determination of the jury.

In Loranger v. Loranger, 115 Mich, 681, l. c. 685, it is held by the Supreme Court of Michigan that the statement of a witness, who was the only person present beside the plaintiff and defendant ''that he did not hear the words alleged to have been spoken, is not conclusive of that question. There was testimony that he was where he might have heard them if spoken, and he was called to dispute the statement of the plaintiff that they were spoken, which he did unqualifiedly. The jury believed the plaintiff, and it was competent for them to find that H—— heard them, his denial to the contrary notwithstanding.''

We therefore hold that this second point, urged in support of a peremptory instruction asked by defendant, is not well taken.

The third proposition urged is that the first instruction given for plaintiff is erroneous in that it ignores the question of publication and authorizes a finding for plaintiff ''in the event the jury find the words charged

spoken in the hearing of other persons, irrespective of whether such other persons heard and apprehended them," and that as this instruction undertook to cover the whole case, and being erroneous, the judgment must be reversed on that account.

This first instruction told the jury that if they believed from the evidence that on or about October 23, 1912, and in the city of St. Louis, the defendant "addressing plaintiff in the presence and hearing of other persons, spoke of and concerning plaintiff words substantially as follows [setting out the words used in the petition], plaintiff is entitled to recover compensatory damages in this action, and your verdict should be in her favor," and if the jury found the words were spoken with malice, etc.; they might, in addition to awarding compensatory damages, award punitive damages.

A second instruction given at the instance of plaintiff makes no reference to the necessity of finding that the words charged must have been uttered in the presence and hearing of others.

We are compelled to hold that both this first instruction as well as the second, are fatally erroneous. It was essential to recovery by plaintiff that she prove not only that there was publication made of the offensive words, but that those who heard understood them; that is, understood that defendant meant to charge plaintiff with being guilty of the practice or act charged. The authorities are all one way as to that, as see Traylor v. White, supra, and Cameron v. Cameron, supra.

The fourth point urged is the failure of the court to rule on a motion made by defendant to strike out a portion of plaintiff's testimony. A question having been answered, counsel for defendant said: "I ask that that be stricken out as not responsive to the question." The court failed to rule on this and to this failure exception was saved. In effect the court allowed the answer to stand. We see no reversible error here. One of the cases relied upon in support of the contention of learned counsel for appellant is that of Stone v. Fry, — Mo. App. —, 178 S. W. 289. An examination of the ques-

tion which was there objected to and upon which objection no ruling was made, shows that it was entirely different and went to the very merits of the controversy and of the issue. We have not held that .failure to rule on an objection, however unimportant, is a ground for reversal, and do not think that the ground here assigned for striking out this answer is tenable; nor do we see any reversible error in allowing the answer to stand. The importance of a ruling by the court on an objection is to allow an opportunity to save exception. When that is afforded, as here, it is sufficient.

The fifth point made is to the error of the court in permitting a witness to testify, over the objection of defendant, to bad language used by defendant toward plaintiff's daughter. It is claimed that this was not in rebuttal of any testimony of defendant and its purpose was to inflame the jury against defendant. On a new trial it is not likely that plaintiff will leave this to rebuttal. We make no ruling on it now.

Nor do we rule on the amount of the verdict, which it is claimed is so gross as to show that it is the result of passion and prejudice. That can abide.

By reason of error in the instructions, as here pointed out, the judgment of the circuit court is reversed and the cause remanded. All concur.