FRED W. KLABER, TRUSTEE, ETC., DEFENDANT IN ERROR, v. CHICAGO ROCK ISLAND & PACIFIC RAILWAY CO., PLAINTIFF IN ERROR.— 33 S. W. (2d) 149.

Kansas City Court of Appeals. December 1, 1930.

*E. M. Harber, A. G. Knight,· Pross T. Cross* and *Gerald Cross* for defendant in error.

*Luther Burns, Henry S. Conrad, L. E. Durham* and *Hale Houts* for plaintiff in error.

CAMPBELL, C.—On May 4, 1926, James R. Kurfman instituted an action against the Chicago, Rock Island & Pacific Railway Company in the circuit court of Grundy county, Missouri.

The petition is in three counts. At the close of the plaintiff's evidence the first and third counts of said petition were dismissed and they therefore pass out of the case.

In the second count of the petition it is averred that the plaintiff therein was thirty-three years of age, married, having a wife and two girl children; that he had always conducted himself as an honest and upright citizen; that he had served as a United States soldier in the World War and received an honorable discharge; that on the 22nd day of October, 1924, in DeKalb county, Missouri, the said railway company, by and through its officer and agent, J. S. Caldwell, while he was in the line of, and in discharge of his duty and in the course of his employment and in the presence and hearing of four persons named and divers other persons, wilfully, wantonly, maliciously and falsely spoke to and concerning plaintiff certain false and defamatory words as follows:

"Kurfman you swore to a lie on the witness stand" (Kurfman meaning this plaintiff and said statement referring to plaintiff's evidence while, and as a witness in said cause). "Kurfman (meaning this plaintiff) swore to a lie and committed perjury while on the witness stand and I want to prove by you that he did lie on the stand." "Kurfman (meaning plaintiff) committed perjury while on the witness stand to-day and I want to prove by you that he did commit perjury on that stand." "Kurfman (meaning plaintiff) you committed perjury while on the witness stand to-day and unless you go back on the stand and acknowledge you lied and perjured yourself, I will see that you lose your job and I will have you black listed so that you can never get a job on any railroad in this part of the country." "Kurfman (meaning plaintiff) you lied and perjured yourself on the witness stand today and if you don't go back on the stand and clear it up, the Rock Island will see that you lose your job" (meaning by the term Rock Island, the defend-

ant Railway Company, by the term job, meaning plaintiff's position as section foreman, of which he then was for the Chicago, Burlington & Quincy Railroad Company). "Kurfman, you lied on the witness stand and committed perjury, but it ain't too late yet to save yourself from being fired and if you will go back on the stand and help us (meaning the defendant, railway company) out in this case, we will protect you and see that everything is all right, and if you don't do this you will lose your job sure and probably go to the penitentiary." "Kurfman (meaning plaintiff) committed perjury in this case while on the witness stand in this case and his soul is black as hell with perjury." "Kurfman (meaning plaintiff), committed perjury on the witness stand in this case and he is so low and contemptibly vile that all men should refuse to associate with him or have anything to do with him." "Kurfman (meaning plaintiff) committed perjury in this case while on the stand, and he is so low that I will not call him a human being." "Kurfman (meaning plaintiff) perjured himself in this case (meaning while on the witness stand in case aforesaid), and he is worse than a thief." "Kurfman perjured himself when he swore on the stand that Smith was struck seventy-five feet north of the crossing and we want to show by you and the other boys that Kurfman did lie on the stand." "We want to show by you that Smith was struck seven rail lengths north of the crossing, and that Kurfman (meaning plaintiff) committed perjury when he (Kurfman) swore he was struck about seventy-five feet north of the crossing."

It is also averred that Kurfman had been duly sworn and testified under oath as a witness in a trial in the circuit court of DeKalb county, Missouri, on or about the 22nd day of October, 1924, wherein Nellie Smith, administratrix of her deceased husband, was plaintiff and the Chicago, Burlington & Quincy Railroad Company was defendant, and that by reason and on account of the foregoing false and slanderous words he has been injured in his good name and reputation and brought into public reproach and contempt and caused to suffer mortification, embarrassment and shame, for which he prayed a recovery of both actual and punitive damage.

The answer to said count is a general denial and an allegation, by way of mitigation, to the effect that plaintiff, before the trial of the Nellie Smith case, had made and signed a written statement at variance with the testimony he gave in said cause; that defendant was, and still is defending the Nellie M. Smith suit and liable to the Chicago, Burlington & Quincy Railroad Company for any judgment therein which may become final against it; that plaintiff in testifying at said trial, and thereafter by deposition, admitted he had given said written statement to defendant and the only excuse

he gave for testifying contrary to said written statement was that the same was not made under oath or sworn to by him.

The jury returned a verdict in favor of the plaintiff, assessing the actual damage at one thousand dollars and punitive damage at the sum of one thousand dollars.

Motion for new trial was filed, overruled, and appeal granted to the defendant from said judgment. That appeal was dismissed in this court on October 3, 1927. Thereafter the said defendant sued out a writ of error in this court to review the judgment and proceedings in the suit so brought by the said James R. Kurfman.

After return to the writ of error, suggestions were filed in this court to the effect that James R. Kurfman had been convicted of a felony and was then undergoing sentence in the State Penitentiary of Missouri, and asking that a trustee be appointed for him.

Thereupon Fred W. Klaber was appointed as trustee and, as such, entered his appearance in this court and the cause has been revived in his name as trustee for the said James R. Kurfman, a convict as defendant in error.

Plaintiff in error does not, in this court, claim that the conviction and imprisonment of Kurfman should in any way influence the disposition of this cause.

Counsel for plaintiff in error, with commendable frankness, in their brief state it is to be conceded that plaintiff's evidence was sufficient to make a prima-facie case. That admission means it was proper for the court to submit the case to the jury. We therefore deem it unnecessary to make an extended statement of the evidence. Plaintiff testified that after he had given evidence as a witness in the Nellie M. Smith case Mr. Caldwell, claims attorney for the plaintiff in error, came to him in the court house, placed his hand on his shoulder and said, ''Kurfman, you swore to a lie on the witness stand. Kurfman you swore to a lie and committed perjury on the witness stand today and if you don't go back on the witness stand and help us and protect us, you will probably lose your job. Kurfman, you lied and perjured yourself on the witness stand and if you don't go back and clear it up the Rock Island will see that you lose your job.'' ''If you don't do this you will lose your job and probably go to the penitentiary.'' He further testified that he had signed the written statement referred to in the answer but that he had never read he statement; that he did not know at the time he signed the statement that it contained a recitation to the effect that he had heard the engine ''blow;'' that said statement was prepared by Caldwell who showed him where to sign it, and then said ''sign here;'' saying also ''those statements had nothing to do with the case, in case it goes to trial.'' At this time he was section foreman for the Chicago, Burlington & Quincy Railroad Company and was

discharged eight days later. Nellie Smith, Fred Hall and George Carter testified in corroboration of the evidence of Kurfman relative to the language used by Caldwell.

Caldwell, called as a witness, denied having made any of the statements attributed to him by the plaintiff, and, in this, he was corroborated by defendant's witness Cotter.

Error is assigned because the court failed to direct a verdict for the defendant at the close of plaintiff's evidence and again at the close of all the evidence. Inasmuch as it is conceded that plaintiff made a prima-facie case, said assignments need no further attention.

The third assignment of error is to the effect that the court erred in giving each of the instructions requested by plaintiff. It is argued that instruction Number 2 authorized a recovery if any part of the slanderous words were spoken by Caldwell; that the instruction assumes and advises the jury as a matter of law that Caldwell uttered at least two of the alleged slanderous statements and that the instruction did not require the jury to find any fact showing that Caldwell spoke the words while acting in the scope of his authority and in furtherance of defendant's business. Said instruction correctly advised the jury as to the allegations of the petition relative to the employment of Caldwell, the alleged slanderous words as set forth in the petition, and then proceeds:

"Now, if the jury find from the evidence that said Caldwell as such agent and representative of the defendant, while in the line of and discharge of his duties, to defendant and in the course of his said employment, said and used to plaintiff in the presence and hearing of one or more of the persons before named, the language heretofore set out and made use of said language or sufficient thereof to charge plaintiff with having committed perjury at the time and upon the trial aforesaid, and that said charges were false (and there is no evidence of the truth thereof, nor is it so claimed or pretended to be by defendant); then the verdict should be for plaintiff, and in this connection the court says to the jury, it is not necessary that plaintiff should prove the speaking of all the words set out in this instruction but it is sufficient to prove sufficient of said words to charge and accuse plaintiff of the crime of perjury in manner aforesaid."

This instruction submitted to the jury the question as to whether Caldwell, as agent and representative of defendant, while in the line of and discharge of his duties as such employee and in the course of said employment, spoke the words attributed to him, and it is therefore not subject to the criticism above referred to.

Said instruction is criticised upon another ground, that is, that it did not require the jury to find that the persons in whose presence and hearing the alleged slanderous words were spoken, heard and

understood them. The instruction does submit to the jury the question whether the words were spoken in the presence and hearing of certain named persons, but does not require the jury to find that said persons understood the alleged utterance. This contention is based upon the proposition that slanderous words are not actionable unless published and that publication is not made until a third person hears and understands them.

In Taylor v. White, 185 Mo. App. l. c. 330, 170 S. W. 412, the plaintiff sought to recover damage for slander. The words charged were slanderous *per se*, the same in that respect as in the instant case. The trial court instructed that the plaintiff was entitled to recover in event the jury found the defendant spoke the words attributed to her.

Said the Court:

"This instruction is erroneous, in that it authorized a verdict for plaintiff on a mere finding that defendant uttered the words of and concerning plaintiff without regard to the fact as to whether they were spoken in the presence of and heard and understood by others. It is certain there can be no slander without publication of the words spoken. It must be shown that the slanderous matter was communicated to some third person who understood it, since, otherwise, there is no publication. There must be a communication of the slanderous words—that is, a speaking of them to or in the presence of some person other than the plaintiff and the defendant—in order to constitute a slander (25 Cyc. 365, 366, 367); for, indeed, the slander and damages which ensue therefrom consist in the publication—that is, the speaking to or in the presence of others the defamatory words and the apprehension of those who hear it. [Caruth v. Richeson, 96 Mo. 186, 9 S. W. 633; Cameron v. Cameron, 162 Mo. App. 110, 114, 144 S. W. 171.]

"The instruction above copied, which is the principal one given and authorizes a verdict for plaintiff as if it covered the whole case, required no finding whatever on the part of the jury as to whether the words spoken were heard and understood in their usual sense by those present. In this the instruction is deficient, and, indeed, none other given on the part of plaintiff requires a finding with respect of this matter, but all authorize a verdict as though it were enough for defendant to speak the defamatory words of and concerning plaintiff, whether heard and understood by others or not. It is true several witnesses who were present say defendant spoke the words as charged and that they heard them, but others, who were likewise present, insist to the contrary, as does defendant herself. It is entirely clear that plaintiff's instruction above copied is erroneous, in that it amounts to misdirection of the jury, for it authorizes a finding for plaintiff on facts insufficient to warrant such in law."

In a later case by the same court, and one in which the language used was slanderous *per se,* the court said:

"This first instruction told the jury that if they believed from the evidence that on or about October 23, 1912, and in the city of St. Louis, the defendant 'addressing plaintiff in the presence and hearing of other persons, spoke of and concerning plaintiff words substantially as follows (setting out the words used in the petition), plaintiff is entitled to recover compensatory damages in this action, and your verdict should be in her favor,' and if the jury found the words were spoken with malice, etc., they might, in addition to awarding compensatory damages, award punitive damages.

A second instruction given at the instance of plaintiff makes no reference to the necessity of finding that the words charged must have been uttered in the presence and hearing of others.

"We are compelled to hold that both this first instruction as well as the second, are fatally erroneous. It was essential to recovery by plaintiff that she prove not only that there was publication made of the offensive words, but that those who heard understood them; that is, understood that defendant meant to charge plaintiff with being guilty of the practice or act charged." [Frazier v. Grob, 194 Mo. App. 405, l. c. 415, 183 S. W. 1083.]

A careful reading of the opinion in the Frazier case, supra, has convinced us the court intended to hold that publication was made if some third person heard *or* understood the offensive words and not that the third person heard and understood the meaning of the obviously slanderous utterance.

In Starnes v. St. Joseph Railway, Light, Heat & Power Company, 22 S. W. (2d) 73, 75, 80, this, court considered an instruction that told the jury that if the defendant "in the presence and hearing of plaintiff and divers other persons" maliciously spoke, etc. the alleged slanderous words, then plaintiff was entitled to recover.

The court said: "The jury is then directed to find that he uttered the slanderous words, omitting to require the jury to find that the alleged slanderous words were heard or understood by some third person. We think the instruction is erroneous." It is evident the instruction under consideration is, when judged by the rule announced in the foregoing cases, erroneous, because it purports to cover the whole case and to authorize a verdict for the plaintiff without requiring the jury to find that the alleged slanderous words were uttered in the presence and hearing of some third person *who heard or understood them.*

Further complaint is made of this instruction because of certain parenthetical expressions set forth therein, it being argued said expressions assume the existence of disputed facts and are misleading. This court must assume that the jurors were men of at least average

intelligence and, if they were, they were not mislead by those expressions.

2. Complaint is made of instruction number 6 given on behalf of defendant in error. It is as follows:

"As before said to the jury there is no pretense by answer of defendant, evidence or otherwise that J. S. Caldwell was justified in speaking, if he did, the words or making the charges of, to and against plaintiff as specified in second instruction here given and if he, said Caldwell, acting in line of his duties to and for defendant, made said charges and statements and thereby charged plaintiff with perjury, there is, as before said, no justification thereof and verdict must be for plaintiff."

The first part of this instruction told the jury there was no pretense by answer, evidence or otherwise that Caldwell was justified in speaking, if he did, the words or making the charges of, to and against the plaintiff as specified in the "second instruction here given," and it then proceeds to advise the jury that if said Caldwell, "acting in line of his duties to and for defendant, made said charges and statements and thereby charged plaintiff with perjury, there is, as before said, no justification thereof." Thus far the instruction is limited to advising the jury to the effect that there was no justification in the case, either by pleading or evidence, and after so advising the jury it concludes with words "and verdict must be for plaintiff." It therefore, by its very terms, purports to cover the whole case, because it directs a verdict for the plaintiff upon the finding by the jury that Caldwell spoke the words *or* made the charges and that when doing so he was acting in the line of his duty for defendant and thereby charged plaintiff with perjury. This instruction does not require the jury to find that the words charged in the petition, *or enough of them,* were spoken by Caldwell while in the line of his duty and acting for defendant nor that the charges and statements were made in the presence and hearing of some third person. It is therefore clear that said instruction violates the rule announced in the foregoing part of this opinion that words obviously slanderous are not actionable unless published, that is, uttered in the presence and hearing of some third person. Moreover, the concluding words of the instruction "and verdict must be for plaintiff" could very readily have been understood as directing a verdict for the plaintiff merely because justification was not pleaded or proven. The use of such words in the closing part of an instruction has been condemned by this court. "Besides the instruction closed with the words 'and your verdict must be for the defendant,' which rendered it objectionable." [Privitt v. Jewett et al., 225 S. W. 127, 129.] Said instruction is fatally erroneous.

Error is assigned to the action of the court in overruling an objec-

948

tion made during the course of the trial to the argument made by counsel for defendant in error. The objection made is not sufficiently definite to enable this court to determine what particular statement was referred to in the objection, and can therefore not be considered. On account of the errors above pointed out, the Commissioner recommends the judgment be reversed and the cause remanded. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur, except, *Trimble, P. J.,* absent.