MINNIE CAMERON, Respondent, v. ALEC. A. CAMERON, Appellant.

Kansas City Court of Appeals, February 5, 1912.

1. **SLANDER: Jury Question.** Plaintiff, the wife of defendant's son, sued for damages for slander claiming defendant called her a "God damn little black bitch" in the presence of others. Defendant denied using that language. *Held*, that the credibility of defendant and his witnesses as well as the truth of their account of the quarrel were issues of fact for the jury to solve.

·2. **SLANDER PER SE.** To call a woman "a whoring bitch" is slander *per se* since the adjective carries the charge that the woman has been guilty of fornication or adultery.

3. **SLANDER: Instruction.** Where the only effect of a provision in an instruction is to increase the burden of plaintiff, the defendant has no cause for complaint.

4. ————: **Remarks of Counsel.** Remarks of counsel to the jury considered and *held* to be without justification or excuse and highly prejudicial.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis, Judge.*

REVERSED AND REMANDED.

*B. B. Gill & Son, John H. Taylor, Paul D. Kitt* and *Fred S. Hudson* for appellant.

*L. A. Chapman* and *Scott J. Miller* for respondent.

JOHNSON, J.—This is a suit for slander and is here on the appeal of defendant from a judgment recovered by plaintiff for $2500 actual and $2500 exemplary damages. Plaintiff is the daughter-in-law of defendant and at the time of the alleged offense was living with her husband on a farm owned by defendant in Livingston county. Defendant lived in Chillicothe but helped his son work the farm and, therefore, was a frequent visitor at plaintiff's home. Outwardly the relations between plaintiff and defendant were friendly but some unpleasant incidents had engendered mutual dislike between them. On or about November 8, 1908, defendant was at the farm and had dinner there in company with a negro farm hand named Curry. Plaintiff prepared and served the meal during the course of which defendant complained of the absence of butter. Plaintiff answered that defendant took home with him all the butter produced on the place. Defendant contradicted her and asserted that plaintiff sold all the butter. Thus far the evidence of the parties is in accord.

Plaintiff testifies that the quarrel over the butter culminated in defendant calling her "a God damned little black bitch." Plaintiff exclaimed, "Don't you call me that," whereupon defendant called her "a God damned little whoring bitch." The conversation was in the presence and hearing of the negro. Plaintiff seized a poker and started towards defendant who, deeming discretion the better part of valor, beat a hasty retreat, not standing on the order

of his going. A month later, and several days before plaintiff gave birth to her first born child, she went to the barn to feed stock and while there with her husband was again called "a God damned little black bitch," by defendant, who was annoyed because plaintiff refused to take a fork full of hay "and climb over a manger and fence to fill a manger over there." On a subsequent occasion defendant used the same expression in a quarrel he had with plaintiff. Defendant found some castaway jar rubbers which seemed useful to him and accused plaintiff of wastefulness in throwing them away. Plaintiff retorted that defendant wasted biscuits on his dog and then defendant hurled his favorite epithet at plaintiff.

Defendant denies in his testimony that he used the epithets we have quoted in the quarrel about butter but admits he called plaintiff a liar. Though his version of his quarrels with plaintiff, if accepted, would relieve him of the charge of slander made in the petition, it shows he was guilty of coarse and brutal conduct towards his son's wife while she was in a condition deserving of kind and considerate treatment. The negro called as a witness by defendant corroborated the testimony of defendant.

The petition alleges "that the defendant, intending to injure plaintiff in her good name, fame and reputation, before her neighbors and friends, did at her home in Livingston county, in the State of Missouri, on or about the 8th day of November, 1908, speak, in the presence and hearing of others, to, of and concerning this plaintiff, and meaning this plaintiff—are a 'God damn little black bitch'—are a 'God damn little whoring bitch,' and did on or about Friday, December 12, 1908, say to plaintiff, in the presence of others, 'you are a God damn little black bitch,' thereby charging this plaintiff with being a person of unchaste character and an immoral person, and said.

language was so understood by several persons hearing said words spoken to, of and concerning plaintiff. . . . That, by the use of the language as above set forth she has been damaged in her good name, fame and reputation among her neighbors and friends, by the false and slanderous words used by the defendant to this plaintiff, in the presence and hearing of other persons, her neighbors and friends, and that plaintiff has suffered great mental pain and anguish, on account of the language used by the defendant, charging this plaintiff with the crime of adultery, and of being a person of immoral character and a person of bad reputation. Wherefore, plaintiff says she has sustained damage in the sum of five thousand dollars.

"Plaintiff states that said words were spoken to, of and concerning plaintiff, by the defendant, wantonly, wilfully and maliciously. Wherefore, she prays the further sum of five thousand dollars, as punitive damage against the defendant."

The answer is a general traverse. At the conclusion of the evidence, plaintiff, compelled thereto by a motion to elect offered by defendant, elected to base her cause of action on the slanderous words alleged to have been spoken November 8, 1908.

Defendant attacks the petition on the ground that it fails to charge that the alleged slanderous statement was false. We do not deem it necessary to decide whether or not such averment is essential to the statement of a good cause of action since we find the petition characterizes the words alleged to have been spoken by defendant as "false and slanderous." Defendant did not attack the petition by demurrer or motion and, applying the liberal rules of construction that obtain in such instances, we hold the petition contains the legal equivalent of a formal averment of the falsity of the slanderous words.

Defendant insists that his request for a peremptory instruction should have been granted for the reason that there is no evidence in the record of a publication of the alleged slander. It is true, as argued, that to constitute a publication it is essential that the defamation not only be heard but be understood by some third person. [McGeever v. Kennedy, 42 S. W. Rep. (Ky.) 114; Sheffill v. VanDeusen, 13 Gray, 304; Schuyler v. Anderson, 52 N. W. Rep. (Mich.) 64; 18 Am. & Eng. Encys. of Law, 1019.]

The testimony of plaintiff shows that when the words were spoken both defendant and Curry were seated at the table and that the utterance was in a loud voice and that Curry, who is not deficient in hearing, must have heard and understood what was said. This evidence is substantial and, therefore, was sufficient to raise an issue for the jury. Curry admits he was there and that he heard and understood all that was said. His denial that defendant uttered the slander was not conclusive and possessed no greater evidentiary force than that of offering opposition to the affirmation of plaintiff that the words were spoken and were heard and understood by Curry. The question of the credibility of defendant and his witness as well as the truth of their account of the quarrel were issues of fact for the jury to solve. The court did not err in overruling the demurrer to the evidence.

In the instructions given the jury at the request of plaintiff the court predicated plaintiff's right to recover on the finding that defendant called her "a God damned little black bitch" and "a God damned little whoring bitch." In one of defendant's instructions the jury were told that the first of these epithets was not slander *per se*.

It is not slander *per se* to call a woman a bitch. [Unterberger v. Scharff, 51 Mo. App. l. c. 110; Boyce v. Aubuchon, 34 Mo. App. l. c. 324; Kerone v. Block, 144 Mo. App. 575; 18 Am. & Eng. Encys. of Law, 938.]

The rule thus is stated in the authority last cited: "The word 'bitch' although a very gross and ruffianly expression when applied to a woman in its common acceptation does not imply whoredom in any of its forms, and, therefore, where a woman is so called the words are not actionable without averring explanatory facts and circumstances showing that the meaning of the word as used was different from what it ordinarily imports."

But to call a woman "a whoring bitch" is a slander *per se,* since the adjective carries the charge that the woman has been guilty of fornication or adultery. [Sections 5424 and 4817, R. S. 1909.]

Defendant argues that it was error to couple together in the instructions of plaintiff slanderous and non-slanderous epithets, and that the error was not cured by a proper instruction defining the terms given at the instance of defendant. The instructions merely followed the allegations of the petition and in them the court did not give the jury authority to return a verdict for plaintiff except on the finding that defendant called her "a whoring bitch." The additional requirement that the jury further should find that defendant also uttered the non-slanderous epithet did not constitute error against defendant since its only effect was to impose on plaintiff a greater burden than the law compelled her to bear.

A number of other errors are assigned and argued by defendant but with one exception we rule all of these points not to be well taken. The exception relates to remarks made by one of the attorneys of plaintiff in his address to the jury. In speaking of the witness Curry, the attorney declared "the petition in this case is founded on what this negro told me in my office as to what defendant called the plaintiff. And further, he said, "The negro was bought. Alec (meaning defendant) ought to have settled with the girl instead of the negro." One of the attorneys for de-

fendant interposed, "We want to make an exception to that, it's an outrage." The court said, "The jury will disregard it; there's no evidence of it." Thereupon defendant's counsel excepted to the action of the court.

The remarks of the attorney were highly improper. Indeed, they were so grossly violative of the rights of the defendant and so palpably without justification or excuse that they should have been met with the sternest rebuke and the attorney should have been severely reprimanded. The ruling of the court while in favor of defendant could not have been couched in milder words and should not be regarded as a sufficient correction of the offense. The trial court is invested with a large discretion in such matters but where it appears the discretion has not been wisely exercised, we do not hesitate to intervene. The exception of defendant called the court's attention to the fact that the punishment did not fit the offense and the court erred in ignoring it. Considering the character of the case the contradictory nature of the evidence and the unenviable position in which defendant's own evidence places him, the error could not fail to be prejudicial. Intemperate, inflammatory or uncalled for abuse of parties and witnesses is an affront to the dignity of the court, an attack on the fair administration of justice and always should be met with immediate and adequate rebuke. For this error the judgment is reversed and the cause remanded. All concur.