JENNIE BOOMSHAFT, Respondent, v. DANIEL W. KLAUBER, Appellant.

St. Louis Court of Appeals. Submitted on Briefs, November 15, 1916. Opinion Filed December 30, 1916.

1. **LIBEL AND SLANDER: Elements of Offense: Publication.** In order to constitute a slander, the slanderous words must be heard by some person other than plaintiff and defendant.

2. ———: ———: ———: **Instructions: Cure by Other Instructions.** In an action for slander, an instruction given for plaintiff, covering the whole case, authorizing a verdict for her on a finding that defendant uttered the slanderous words of and concerning plaintiff, in the presence of one or more persons, and that they were false, without requiring a finding that they were heard by a third person, was erroneous, in that it did not require a finding of publication; and the error was not cured by an instruction given for defendant, charging that if the alleged slanderous words were understood by the hearers as mere terms of abuse, and not as an accusation, the verdict should be for defendant, for, where plaintiff's instruction purports to cover the whole case, its omissions cannot be supplied, nor its errors cured, by other instructions given.

3. **INSTRUCTIONS: Omissions Cured by Instructions.** Where an instruction given for the plaintiff purports to cover the whole case, and authorizes a verdict on the facts therein hypothesized, but omits to require facts to be found that are essential to sustain the cause of action, the error cannot be cured, nor the omission supplied, by instructions given for defendant.

4. ———: **Assumption of Disputed Facts.** An instruction which assumes that a certain state of facts is true or that a certain condition obtains, is erroneous, where the evidence of the one party affirms, and that of the other party denies, the existence of such state of facts or condition.

5. ———: **Referring to Pleadings.** An instruction which refers the jury to the pleadings for certain facts to be found, is erroneous.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

REVERSED AND REMANDED.

*Chester H. Krum* for appellant.

(1) The verdict was against the evidence. (2) The verdict was against the instructions of the court asked by and given for the appellant. These instructions were given upon the theory that the situation justified the belief, that respondent's conduct showed she was dealing with stolen property. The words used were evidential of malice under the circumstances. Farley v. Thalheimer, 103 Va. 504; Ritchie v. Stenins, 73 Mich. 563. (3) The instruction as to the speaking of the words, given for respondent, was erroneous. This follows from the fact, that the petition did not state a cause of action. The instruction omitted the words "and hearing," admitted by the amendment to be essential. (4) The permission given to amend was altogether without authority. Section 1848, Revised Statutes, does not by its terms or by its intendment cover the amendment after verdict of a petition which does not state a cause of action. Bricken v. Cross, 163 Mo. 449-457.

*H. A. Yonge* and *Gustave Cytron* for respondent.

(1) The petition was good before the amendment. Under the statute it is only necessary to allege in an action for slander that the words were spoken of and concerning the plaintiff, and it is not necessary to charge that they were spoken in the hearing of any one. R. S. 1909, sec. 1837; Arwinger v. Fellner, 46 Mo. 276; Steiber v. Wensel, 19 Mo. 513. But clearly, under sec. 1851, R. S. 1909, the amendment of the petition after judgment was proper. (2) If the plaintiff's instruction is erroneous in failing to require the jury to find that any one heard defendant speak the words imputing the charge of thief to the plaintiff, it

is cured by defendant's instructions which assume that the words spoken were heard by others, and submit to the jury the question as to what the hearers understood the defendant to mean by them. Anderson v. Railroad, 161 Mo. 411; Meadows v. Insurance Co., 129 Mo. 97; Shores v. St. Joseph, 134 Mo. App. 12. (3) The charge that plaintiff was a thief is slanderous *per se* and implies malice. Miller v. Dorsey, 149 Mo. App. 24; Carpenter v. Hamilton, 185 Mo. 603; Grimes v. Throp, 113 Mo. 625; Baldwin v. Frier, 46 Mo. App. 288; Israel v. Israel, 109 Mo. App. 366. (4) The question whether the words were spoken as mere words of abuse and so understood by the hearers was a question of fact which was submitted to the jury by instructions asked by the defendant, and their finding is conclusive on the defendant. Miller v. Dorsey, 149 Mo. App. 45. (5) The fact that defendant in charging plaintiff with being a thief accompanied the charge with an opprobrious epithet, not only does not relieve the charge of its slanderous nature, but aggravates it. Miller v. Dorsey, 149 Mo. App. 24; Israel v. Israel, 109 Mo. App. 366. (6) No explanatory statements were made by the defendant in connection with the defamatory charge, and the circumstances were not such that this court can say as a matter of law that the defendant did not intend to charge the plaintiff with being a thief. Israel v. Israel, 109 Mo. App. 366. Even the authorities cited by the appellant hold that the fact whether the words were spoken in such heat of passion, or under such provocation as to relieve them of their slanderous nature, is a question of fact for the jury. (7) Even if the circumstances tended to show that the defendant claimed that the plaintiff had bought his property from another, and was guilty of receiving stolen property, knowing it to have been stolen, the offense in law is punishable as for stealing the property, and is a species of larceny, and so closely related to the crime of larceny that this technical distinction should not prevail. Miller v. Dorsey, 149 Mo. App. 42.

REYNOLDS, P. J.—Action for slander. The petition charges that in a certain discourse which the defendant had with plaintiff, relating to a certain load of scrap iron purchased by plaintiff, "and in the presence of divers good and worthy citizens of this State [defendant] falsely and maliciously said, rehearsed and proclaimed and loudly published these false, slanderous, malicious and opprobrious words of and concerning the plaintiff: 'I'll fix you. You —— of a —— and thief;' thereby charging plaintiff with having committed the crime of larceny." It is charged that defendant used these words falsely and maliciously and rehearsed and proclaimed and loudly published these false, slanderous, malicious and opprobrious words of and concerning plaintiff and that thereby defendant had charged plaintiff with having committed the crime of larceny. Averring injury to her name, etc., plaintiff prays judgment for actual and compensatory damages in the sum of $5000. (The words which we have supplied by dashes were given in full in the petition and in evidence, as well as in the instructions, and while vile and obscene are not counted upon as slander, so that it is unnecessary to set them out).

The answer was a general denial.

There was a trial before the court and a jury and a verdict for plaintiff for $150 actual and $250 punitive damages. When this verdict came in defendant in due time moved for a new trial on the ground that the court had erred in giving improper instructions asked by plaintiff and in giving others of its own motion, and that the verdict of the jury was against the evidence and the weight of the evidence. Defendant also filed a motion in arrest on the ground that the petition "does not state facts sufficient to constitute a cause of action in this: That while it is averred in the petition that the words complained of were spoken in the presence of divers good and worthy citizens of this State, it is nowhere averred that such persons either heard the words as spoken or understood them when

they heard them." Pending the consideration of these motions for new trial and in arrest, plaintiff moved the court to be allowed to amend her petition by inserting the words "and hearing" after the word "presence," making the averment read: "In a certain discourse, which said defendant had with plaintiff relating to a certain load of scrap iron, purchased by plaintiff, and in the presence *and hearing* of divers good citizens of this State," etc. (Italics ours.) It is set out in this motion that the omission of the words "and hearing," from the petition was first called to the attention of plaintiff and the court by the defendant's motion in arrest of judgment; that the defendant did not file any demurrer to the petition, or object to the introduction of any evidence thereto, on the ground that it failed to state a cause of action, as alleged in his motion in arrest of judgment, and had raised the question of the omission of those words in the petition for the first time in his motion in arrest of judgment; and because the omission from plaintiff's petition was cured by proper instructions to the jury and the evidence adduced at the trial, without objection by defendant. The court sustained this motion and permitted the petition to be amended by the insertion of the words "and hearing" at the place referred to and overruled both the motion for new trial and in arrest, defendant excepting to all of this action of the court. Judgment thereupon followed on the verdict heretofore set out. From this defendant has duly appealed.

The learned counsel for appellant relies upon five points for the reversal of the judgment. The third point is, that the instruction as to the speaking of the words, given for respondent, was erroneous in that it omitted to instruct the jury that the words spoken were spoken in the hearing of others. The fourth point is that the trial court erred in permitting the amendment to be made to the petition by the insertion of the words "and hearing."

In the view we take of the case the only point necessary to determine is the third.

There was evidence tending to show that plaintiff's husband was a dealer in scrap iron or junk, in the city of St. Louis, defendant apparently being a much larger dealer in these articles than plaintiff's husband. For brevity, we refer to the premises and business of plaintiff's husband as that of plaintiff, although plaintiff refers to it as "their" business, premises, etc. On the day of the utterance of what is counted on as the slander, defendant had been on a street car and saw one of his drivers, driving a team with a wagon attached, going south on Broadway. He remained on the car until he came to his own place of business and there was informed that one of his drivers had driven off with a load of iron belonging to defendant. Defendant at once ran to catch a Broadway car on Seventh street; missing that, he ran along Broadway and came to an entrance to the yard of plaintiff's place of business by which people drive into the yard with wagons. He saw his driver with a wagon loaded with scrap iron belonging to him in the yard and called to him, "This is a nice way that you are doing." As soon as the driver saw defendant coming into the yard, he jumped off the wagon and ran away and was not present at the difficulty between plaintiff and defendant. Defendant testified that plaintiff's husband was there at the time at scales which were in the yard. In this, however, he was contradicted by plaintiff and by a colored man, who was in the employ of plaintiff, and there is no pretense that plaintiff's husband heard or took any part in the conversation or quarrel which took place between plaintiff and defendant. There was, however, a colored man in the employ of plaintiff in the yard, handling a wheelbarrow on which the scrap iron, as it was taken out of the wagon by defendant's driver, was loaded, to be carried to plaintiff's scales and there weighed. According to the testimony of defendant this colored man, as soon as defendant came into the yard, ran across Broadway and was not in the yard and not present and in hearing at the time of the occurrence between plaintiff and defendant. On

this latter point the testimony of defendant was positive; that is, he testified that neither the colored man nor anyone else was present or within hearing when the conversation took place between himself and the plaintiff. According to the defendant, plaintiff herself was not in the yard when he first went in there and accosted his driver but was in her house and came out after her colored employee had left. According to plaintiff, however, about nine o'clock in the morning of the day of the happening of the incident, a man drove up to their premises with a load of scrap iron and asked her if she would buy the iron. She said that she would, and told the driver to go out to his wagon and she would send a man out, referring to the colored man who worked for her. She accordingly sent this colored man out with a wheelbarrow to help the driver unload and put the iron in the yard. This colored man testified that he took one wheelbarrow load of iron and put it on the scales, and while he went out to get the rest of the iron, defendant came through the yard very fast. Plaintiff testified that she did not see defendant as he entered, as she had her back turned to the scales, and that defendant ran over to the scales and said something that she did not hear. When plaintiff heard defendant talking she started towards him, when defendant said to her, "What business you have to buy my iron?" Plaintiff said, "I didn't know it was your iron." Defendant said, "Why, you are a liar, you did know it was my iron." Plaintiff said, "No, sir; I did not." Defendant said, "Why, everybody knows Klauber's team; everybody in St. Louis knows Klauber's team." Plaintiff said, "I didn't see any name on your team. I seen it was a coal wagon standing there. I didn't know whether it was your team or anyone else's. If you don't fuss, you can have it back." To which defendant said, "No, I don't want it back. I will fix you, you ——— of a —— and thief." Defendant then walked up and down the yard and kept on talking and, according to plaintiff and the colored man, repeated the

offensive words several times, walking up and down the yard and talking to himself. According to plaintiff and the colored man, defendant "was awful mad" and red in the face. Defendant finally left the yard and went out on the street. The colored man testified very positively that he was present and heard the defendant use the language counted on, and he repeated it word for word as testified to by plaintiff.

It thus appears that there was a sharp conflict in the testimony on behalf of plaintiff and that of defendant as to whether the slanderous words were spoken in the hearing of a party other than plaintiff. On that state of the evidence the court, at the instance of plaintiff, gave the instruction complained of, that instruction telling the jury that if they found from the evidence that on the day named "and in the presence of one or more persons, in a conversation then and there had between plaintiff and defendant in reference to some scrap iron purchased or about to be purchased by plaintiff, which defendant claimed was his iron, the defendant falsely and maliciously used and spoke the words of and concerning the plaintiff (quoting them), your verdict must be for the plaintiff." It will be noted that this instruction did not direct the jury to find that the words spoken had been heard by any third person.

It is further to be noted that the averments in the motion made by plaintiff for leave to amend the petition by interlining the words, "and hearing," correctly state the matters therein set out as to what had occurred at the trial of the case up to the time of filing that motion, save as to what the instruction required. Newell, in his work on Slander & Libel (3 Ed.), sec. 234, p. 279, says:

"It is no publication when the words are only communicated to the person defamed; for that cannot injure his reputation. A man's reputation is the estimate in which others hold him; not the good opinion which he has of himself. The communication, whether it be in words or by signs, gestures or caricature, must

be intelligible to such third person.  If the words used be in the vernacular of the place of publication, it will be presumed that such third person understood them until the contrary be proved.  And it will be presumed that he understood them in the sense which such words properly bear in their ordinary signification, unless some reason appear for assigning them a different meaning.''

Townsend on Slander & Libel (4 Ed.), p. 83, sec. 95, says:

''Every communication of language by one to another is a publication.  But to constitute an *actionable publication,* that is, such a publication as may confer a remedy by civil action, it is essential that there be a publication to a *third person,* that is, to some person other than the author or publisher and he whom or whose affair the language concerns. . . . No possible form of words can confer a right of action for slander or libel, unless there has been a publication to some third person.''

At page 88, section 107, the same author says:

''The requisites of *an oral publication* are: (1) that the language be spoken to or in the presence of at least some one third person. . . . No possible form of words can be the basis of an action for slander if at the time of their utterance the only persons present are the speaker and the person to whom or whose affairs the language concerns.  (2) The third person present must *hear* the language spoken.  Whether the third person present at the speaking did or did not hear the language spoken is, in every case, a question of fact.  And this is not the less the rule because where the speaking is in the presence of a third person, under such circumstances that he might have heard what was spoken, he may, as a rule of evidence, be assumed to have heard it, until it be shown that he did not hear.  The burden is on him who alleges a publication to establish that the third person heard the language spoken.  (3) The third person must understand the language (sec. 96).''

Referring to this last or third element, it is said by the same author at section 96:

"There cannot properly be said to be a communication of language by one to another, unless that other understands the signification or meaning of the language sought to be communicated. When we say the language must be understood by the one to whom it is published, we mean only that the matter published must be in a language to which the person to whom it is published can interpret to some meaning. To one who does not understand the language in which a publication is made, it is as to him nothing more than unmeaning sounds or signs, and not language." (The italics in the foregoing citations from Townsend are those of that text-writer).

Our own court in Gold v. S. Pian Time Payment Jewelry Co., 165 Mo. App. 154, 145 S. W. 1174; Traylor v. White, 185 Mo. App. 325, 170 S. W. 412; Walker v. White, 192 Mo. App. 13, 178 S. W. 254, and Frazier v. Grob, 194 Mo. App. 405, 183 S. W. 1083, as also Wright v. Great Northern Ry. Co., 186 S. W. 1085, having under consideration the subject of libel or slander has so held. So our Supreme Court held in Caruth v. Richeson, 96 Mo. 186, 9 S. W. 633, and the Kansas City Court of Appeals in Cameron v. Cameron, 162 Mo. App. 110, l. c. 114, 144 S. W. 171. In the cases of Traylor v. White, supra, and Walker v. White, supra, an examination of our files shows that the petitions in the cases averred that the words spoken and published of and concerning the plaintiff by the defendant were spoken "in the presence and hearing of divers persons;" and in each of them, as will be seen by reference to the decisions as reported, there was evidence that the actionable words had been spoken not only in the presence, but in the hearing, of divers and sundry persons other than the plaintiffs. But in each case instructions given on behalf of plaintiffs and purporting to cover the whole case were held to be erroneous in that they authorized a verdict for plaintiffs on a mere finding that the defendants had uttered the words

of and concerning plaintiffs, without also requiring the jury to find that the words were spoken in the presence of and heard and understood by others, although the evidence there showed that the words were spoken in the hearing of others and that they understood them.

Our court, in Traylor v. White, supra, l. c. 330, said: "It is certain there can be no slander without publication of the words spoken. It must be shown that the slanderous matter was communicated to some third person, who understood it, since, otherwise, there is no publication."

In those cases it was urged, as here, that the error in plaintiff's instructions had been cured by defendant's instructions, which assume that the words spoken were heard by others. That may also be said, and so it is urged, in the case at bar as to the instructions given in behalf of defendant, one of them telling the jury that although they may believe that the defendant used of and concerning the plaintiff the word "thief," as alleged in the petition, "yet if the jury believe from the circumstances and the connection in which the word was used and the other words with which it was associated that it was merely used as a term of abuse and not intended as the truth, or that the words were understood by the hearers as mere terms of abuse and not as being intended to charge as a fact that plaintiff was a thief, then the jury should find for the defendant." So that we have here the same situation presented as in the cases of Traylor and Walker, above cited, that is, instructions given at the instance of defendant which included as a fact to be found that the words had been uttered in the hearing of others. Our court held in each of the cases that this did not cure the defect in the instructions of the plaintiffs, those instructions undertaking to cover the whole case. That is the situation here. We feel bound by authority to hold that the instruction here given at the instance of plaintiff, and which we have set out substantially as given, demands a reversal of the judgment in this case.

We do not agree with learned counsel for defendant that an amendment cannot be made in a petition after verdict.

Whether, under the provisions of section 1848, Revised Statutes 1909, an amendment to the petition can be made after verdict, we need not here decide. [See, however, Budd et al. v. Hoffheimer, 52 Mo. 297, l. c. 303; Blair v. Chicago & Alton R. R. Co., 89 Mo. 383, l. c. 389, 394, 1 S. W. 350; Cabanne v. Spaulding et al., 14 Mo. App. 312, l. c. 314, the latter construing what are now sections 1848 and 1851, Revised Statutes 1909, as also Bricken v. Cross, 163 Mo. App. 449, l. c. 457, 64 S. W. 99.]

The difficulty that meets us here, and it is fatal to respondent, is, that the jury never passed upon the case as it was presented with this amendment, which consisted in inserting in the petition, and after verdict, the words, "and hearing." Whether the slanderous words were uttered in the hearing of any party other than plaintiff was sharply controverted in the case at bar. The plaintiff and her employee, the colored man, it is true, testified that the words were uttered in the presence of this colored man and were heard by him. It is also true that no objection was made at the trial to this line of testimony, nor was the petition, as it stood before the amendment, attacked at the trial nor until afterwards, when it was attacked by the motion in arrest, filed after verdict. But it is also true that the defendant flatly and most positively denied that anyone was present but himself and the plaintiff, or within hearing of them, at the time he is alleged to have uttered the words complained of, coupling that with a denial of ever having uttered the slanderous word, or any one of like import. It was, therefore, for the jury, under such a state of facts, to have determined this matter on the credibility of the witnesses. The Kansas City Court of Appeals, in Cameron v. Cameron, supra, l. c. 114, where a third person, one Curry, admitted by both parties to the action to have been present during the conversation when the slanderous words were

said to have been uttered, and who testified that he heard and understood all that was said, but denied that the defendant had uttered the slanderous words, held that his denial "was not conclusive and possessed no greater evidentiary force than that of offering opposition to the affirmation of plaintiff that the words were spoken and were heard and understood by Curry. The question of the credibility of the defendant and his witness as well as the truth of their account of the quarrel were issues of fact for the jury to solve." It was therefore held in that case, that the court did not err in overruling the demurrer to the evidence on the ground that the third person denied that the slanderous language had been used. But in the case at bar the court, in the instruction given at the instance of plaintiff, and which, as before said, purported to cover the whole case, did not submit to the jury the determination of the credibility of the testimony as between plaintiff and her witness on the one side and that of the defendant on the other, as to whether that witness or any party other than plaintiff had heard the slanderous word. That was of the very gist of the action— the very foundation of the claim of "actionable publication." True the court told the jury that plaintiff was entitled to recover, if the slanderous word was spoken "in the presence of one or more persons." It might well be that they were spoken in the presence of a third party, but where, as here, the defendant emphatically denied that any third party heard the conversation or was present who could possibly have heard the language used, it was for the jury to determine that very important fact. By this instruction, as asked and given at the instance of plaintiff, the verdict of the jury is not responsive to this very material issue.

As the cause is to be remanded it is well to call attention to an error in the second instruction, not indeed raised by learned counsel for appellant before us, but which we notice ourselves so that if another trial is had, it will not be repeated. That error is in

the second instruction given at the instance of plaintiff, which told the jury that if it found from the evidence that defendant "spoke the slanderous words as charged in the petition, then the law presumes they were spoken maliciously, and it is unnecessary to prove any express malice in order to warrant a verdict for plaintiff." The phrase, "as charged in the petition," in this instruction is improper. So it has been held in case after case by our courts.

For the error which we have pointed out in the main instruction which was given at the instance of plaintiff, we are compelled to reverse the judgment. That is accordingly done and the cause remanded. *Allen* and *Thompson, JJ.,* concur.