## C. A. BASSETT, Respondent, v. MOBERLY PAVING BRICK CO., Appellant.*

Kansas City Court of Appeals. December 1, 1924.

1. EXPLOSIVES: Whether Discharge of Dynamite Blast Was Sole Cause of Horse Running Away Held for Jury. In an action for personal injuries received by plaintiff, when defendant negligently discharged blast, causing his horse to run away, whether plaintiff and his horse were hit by flying debris or whether discharge of blast sole cause of horse running away *held* for jury.

2. APPEAL AND ERROR: Where Finding of Jury Was Based on Substantial Evidence, Appellate Court is not Authorized to Disturb Such Finding. Where there was substantial evidence to support finding of jury appellate court is not authorized to disturb such finding.

3. EXPLOSIVES: Defendant Liable for Negligent Discharge of Blast Frightening Horse. If defendant negligently discharged blast when

219 Mo. App.—6.

plaintiff was in a position of peril, and such fact was known to defendant, liability would exist for frightening horse by noise alone.

4. **NEW TRIAL:** Awarding New Trial on Ground Verdict Against Weight of Evidence Within Province of Trial Court. Awarding of new trial upon ground that verdict is against weight of evidence is especially the province of trial court.

5. **EVIDENCE:** Admissions of Plaintiff Made While Attempting to Compromise Case Out of Court Held Properly Excluded. Exclusion of admissions claimed to have been made by plaintiff, relative to manner of his injury, to employee of defendant, in an attempt to compromise and settle case out of court, *held* proper.

6. **INSTRUCTIONS:** Instruction Held Not Erroneous as Assuming That Blast Was Fired Before Plaintiff Had an Opportunity to Pass Beyond Reasonable Range of Danger. Instruction not erroneous as assuming that blast was fired before plaintiff had an opportunity to pass beyond reasonable range of danger, where jury were told they could find for plaintiff only in case they further found and believed the shot was negligently fired without waiting for plaintiff to pass beyond reasonable range of danger, and without notifying plaintiff in time for him to pass beyond such range.

7. **DAMAGES:** Amount of Damages Must Depend Upon and be Considered with Facts in Relation to Injury and Seriousness of Result. There is no fixed rule by which courts may be governed in estimating damages for personal injuries, as amount of damages in each case must depend upon and be considered in connection with facts in relation to injury and seriousness of result.

8. **DAMAGES:** In Action For Injuries Received by Plaintiff as Result of Blast, a Verdict for $3,666 Held not Excessive. Where plaintiff's elbow was dislocated and broken and tendons torn and so that he was unable to raise his left hand to his face, and unable to perform labor for remuneration, and, although 78 years of age, could perform a man's work, and had actually earned $900 per year, a verdict for $3,666 *held* not excessive.

---

*Corpus Juris-Cyc. References; Appeal and Error, 4 C. J., p. 853, n. 59. Damages, 17 C. J., p. 870, n. 59; p. 871, n. 61; p. 1102, n. 40. Evidence, 22 C. J., p. 308, n. 73, 74, 75, 76; p. 310, n. 77, 78, 79. Explosives, 25 C. J., p. 195, n. 60; p. 196, n. 65; p. 210, n. 8. New Trial, 29 Cyc., p. 821, n. 36; p. 1009, n. 54. Trial, 38 Cyc., p. 1666, n. 83.

Appeal from the Circuit Court of Randolph County.
—*Hon. A. W. Walker,* Judge.

AFFIRMED.

*Hulen & Walden* for respondent.

*Willard P. Cave* for appellant.

ARNOLD, J.—This is an action in damages for personal injuries. Defendant is an incorporated company engaged in the manufacture of brick from shale, and was operating near the city limits of Moberly, Randolph County, Mo.

In going to the shale beds from Moberly, persons drive west on Fisk avenue to the end thereof, then south on Park avenue to the south limits of the city, where Park avenue merges into a neighborhood road that runs south on the west side of defendant's shale pit. This work had been carried on by defendant for many years and as a result there was a deep excavation in the surface of the south slope of the hill wherein the pit was located. A hill begins its descent at the point where the road turns into Park avenue and about half way down the decline there is a hump or knuckle which is rather more precipitous than north thereof

Prior to the date of plaintiff's injury defendant had removed all of the available shale east of the old road which was an extension of Park avenue south and a little west past the shale pits, said road having been a public highway for more than forty years and served several families living to the south and west. In the summer of 1923, defendant, desiring to reach shale deposits west of the old road, established a new road about 185 feet west of the old one and running in the same direction. Defendant then ran the cut by means of a steam shovel in a general westerly direction beyond the old road. This cut was approximately sixty feet in width and from twenty to thirty-seven feet in depth, the west wall of which sloped at an angle of about forty-five degrees and was within ten to twelve feet of the new road, being about half way down the incline of the hill. The hump

or knuckle of this new road was somewhat south of the said cut. It was steeper than the rest of the hill, having a drop of about twelve per cent and was so steep that a vehicle passing over it would disappear from the sight of watchers standing at the cut, and then reappear farther down about the place where a creek intersected the road. The sharp decline in the hill at the knuckle would cause a vehicle to press upon a horse hitched thereto in making the descent.

Defendant used dynamite in its excavating operations, setting off the charges by means of an electric battery operated by a man on top of the embankment. At the time of the injury to plaintiff the cut had been driven west of the old road a distance approximately 100 feet. The evidence shows the distance from the middle of the knuckle to a point 100 feet west of the old road in the south bank of the cut was 342 feet.

Plaintiff, a man 78 years of age, lived in Moberly but owned a small farm of thirty-three acres about two miles southwest of the shale pits. He operated the farm himself, personally doing most of the work and labor incident thereto. It was his custom to drive back and forth daily between his farm and his home. The petition states that on August 13, 1923, at about 7:30 a. m. plaintiff was on his way to the farm in a spring buggy drawn by a young horse. He passed the place where defendant's employees were working at the cut and waved a greeting to two men on the south bank of the cut who were engaged in cleaning out a drill hole preparatory to placing a shot. The horse proceeded in a brisk walk, being inclined to increase his speed on reaching the knuckle because of the buggy crowding upon him, but the driver held him to a fast walk until they were on the steepest part of the hill when a blast was discharged at the cut by defendant's employees. The horse took fright and ran away down the hill to the south for several hundred feet to a turn in the road to the west, at which point the buggy was overturned. Plaintiff was thrown out and his left arm broken or dislocated, or both,

at the elbow. He testified he was struck on the neck by flying particles from the blast; that flying particles also struck the horse and that this, together with the loud detonation from the blast caused the horse to take fright and run away, although he was gentle. The testimony in defendant's behalf shows that the blast which is alleged to have caused the accident was discharged in the southwest corner of the pit.

The negligence charged in the petition is as follows:

"And while plaintiff was on said road or street at or near said place and while plaintiff was in a position of peril from the discharge of explosives in said quarry, which defendant knew or by the exercise of ordinary care might have known, defendant negligently and carelessly, without any warning to plaintiff, although defendant had opportunity to warn plaintiff, discharged a quantity of high and dangerous explosive at said quarry causing large quantities of rock and debris to fall upon and strike plaintiff and his horse and conveyance, and creating by said explosion a concussion or blast and noise terrifying to horses of ordinary gentleness."

The answer was a general denial and a plea of contributory negligence, to which defendant made general denial. At the close of plaintiff's evidence, and again at the close of all the evidence, defendant offered an instruction in the nature of a demurrer which the court refused. The jury found for plaintiff in the sum of $3,666. Motions for new trial and in arrest were unavailing and defendant appeals.

It is charged, first, that the court erred in refusing to sustain defendant's demurrers, and it is urged that plaintiff's evidence shows that it was 342 feet (114 yards) from the steepest part of the hill, called the knuckle, to the south bank of the quarry, at the point where the shot was fired, and that the bank was thirty-seven and one-half feet deep. From these facts defendant argues that from a light shot (which defendant insists was discharged) it would have been physically improbable that any particles of debris were thrown

that distance, the blast being shot from inside the cut and near the southwest corner at the base of the incline. There is testimony that the noise of the shot fired was very loud and could have been heard a great distance. Plaintiff testified positively that both him and his horse were hit by flying debris and in this statement he is not directly contradicted, although some of his witnesses testified they saw no debris falling. This is not positive contradictory evidence and we consider that of plaintiff sufficiently substantial to take the case to the jury. The court did not err in overruling the demurrers.

Aside from the allegation in the petition that the horse was struck and frightened by the flying debris from the blast, there is the specific charge of "creating by said explosion a concussion or blast and noise terrifying to horses of ordinary gentleness . . . that said horse was frightened by the concussion, blast and noise of said explosion . . . so that it ran away and overturned plaintiff's wagon and injured plaintiff" etc.

There was substantial evidence in support of this allegation and since the jury found for plaintiff we are not authorized to disturb such finding. Certainly if the fact were established that defendant negligently discharged the blast when plaintiff was in a position of peril, and such fact was known to defendant, liability would exist for frightening the horse by the noise alone. This ruling is supported by the case of Bush v. Railroad, 164 Mo. App. 420, 144 S. W. 1123. In that case a locomotive and train had been standing at a station for fifteen or twenty minutes; upon receiving a forward signal the engineer opened the cylinder cocks to permit the condensed steam and water to escape therefrom, and immediately after, sounded two sharp blasts of the whistle. This sudden emission of steam, together with the loud hissing and buzzing incident thereto, frightened the team of horses driven by Bush so that they became unruly, and at the blasts of the whistle, they became terrorized and wholly unmanageable. The wagon was overturned, and

the driver thrown out, sustaining fatal injuries. The court said:

"Of course there was no breach of duty on the part of . . . defendant in merely opening the cylinder cocks to permit the escape of accumulated steam and water or in sounding the whistle in the usual way before starting, for the railroad company may certainly do those things which are essential to the performance of its office in the customary way. But though such may be true, the precepts of ordinary care for the safety of others in the thoroughfare would suggest that the cylinder cocks be not suddenly opened and the whistle sharply and suddenly sounded by the engineer at such a place, without first exercising ordinary care to ascertain the presence of passing teams in the road so near. If the presence of a passing team is discovered, due care should be exercised to avert injury to others. [Brown v. Mo. Pac. Ry. Co., 89 Mo. App. 192.]"

The verdict was for plaintiff in that case and the trial court set it aside and granted a new trial, for two reasons: (1) Because if the defendant engineer was not negligent, as found by the jury, then there was no negligence on the part of the railroad company; (2) because the verdict was against the evidence and the weight of the evidence. The St. Louis Court of Appeals reversed the order of the trial court in granting a new trial and directed the re-establishment of the verdict for plaintiff.

It may be observed in the present case, the awarding of a new trial upon the ground that the verdict is against the weight of the evidence is especially the province of the trial court. [Gate City National Bank v. Boyer, 161 Mo. App. 143, 143 S. W. 487.] We find in the record before us substantial evidence to support the verdict.

It is charged also that the court erred in refusing to permit witness Barr (for defendant) to answer certain questions relative to admissions claimed to have been made by plaintiff relative to the manner of his injury, in the course of conversations between plaintiff and

Barr, an employee of defendant, in an attempt to compromise and settle the case out of court. The general rule in regard to the admissibility of such evidence is stated in 22 Corp. Jur., pp. 308-9-10, sec. 347, as follows:

"The law favors the settlement of controversies out of court, for which reason a person is entitled to 'buy his peace,' or to endeavor to do so, without danger of being prejudiced in case his effort should fail. It is therefore well established that it is not permissible to show that one party to the litigation offered to compromise. The rule in this respect excludes not only the bare fact of the offer, but also all that occurred during the negotiations, including admissions made for the purpose of reaching an agreement as to an amicable settlement; and is applied with equal force whether the offer was made by the party against whom a claim is asserted or by the party who asserts a claim, and whether the offer was made before or after the commencement of the action."

In Jacks v. Link, 291 Mo. 282, 236 S. W. 10, l. c. 14, it is said:

"The negotiations, correspondence, and unsigned form of deed of trust all constitute matters occurring in the course of an attempt to compromise and settle the appellant's claim, and should be excluded as testimony tending to define the nature of the transaction at bar."

Under these authorities we hold the court did not err in refusing to admit the testimony of witness Barr.

Complaint is made that instructions 1 and 4 for plaintiff are erroneous because, under the evidence, the shot fired was neither careless nor negligent, and that instruction 1 assumes that it was fired before plaintiff had an opportunity to pass beyond the reasonable range of danger. The part of the instruction to which this criticism is directed is as follows: ". . . and you further find and believe that such explosion either by the noise therefrom or by throwing rock or debris into said highway near or upon plaintiff and his horse caused said

horse to run away and overturn plaintiff's wagon and injure plaintiff, then your verdict should be for the plaintiff.''

We think the instruction itself refutes this charge. A careful reading convinces us beyond question that the jury were told they could find for plaintiff only in case they further found and believed the shot was negligently fired without waiting for plaintiff to pass beyond reasonable range of danger, and without notifying plaintiff in time for him to pass beyond such range. There was evidence tending to show that plaintiff was not warned of the impending shot, and that he was within the range of danger when the shot was fired. [Beier v. Transit Co., 197 Mo. 215, 231, 94 S. W. 876.]

What we have said as to instruction No. 1 applies with equal force to the objection urged against instruction No. 4. We find no assumption of any fact essential to plaintiff's recovery in either instruction.

Finally defendant urges the verdict is excessive. There is no fixed rule by which courts may be governed in estimating damages of this character. In each case the amount of damage must depend upon and be considered in connection with the facts in relation to the injury and the seriousness of the result. [Brady v. Railroad Co., 206 Mo. 509, 105 S. W. 1115.] The testimony herein tends to show that plaintiff's left elbow was dislocated and broken and the tendons torn; that the result was anchylosis of that joint as well as joints in the left hand; that plaintiff is unable to raise his left hand to his face and that he is unable to perform labor for which he may receive remuneration. Further the testimony shows that prior to the injury plaintiff, although 78 years of age, could perform a man's work on his little farm and that he actually earned $900 per year. This capacity to earn was destroyed and the jury well may have considered that his capacity to earn this amount might have continued for a period of at least four years

We do not feel justified in disturbing the finding of the jury in this respect.

Failing to find reversible error of record, we affirm the judgment. It is so ordered.

All concur.