LYMAN L. STARNES v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY, Appellant.—52 S. W. (2d) 852.

Division One, September 3, 1932.

*Mayer, Conkling & Sprague* for appellant.

46

*Mytton & Parkinson* for respondent.

ATWOOD, J.—Lyman L. Starnes sued St. Joseph Railway, Light, Heat & Power Company for slander and obtained a judgment in the Buchanan County Circuit Court for $518 actual damages and $250 punitive damages. Defendant appealed to the Kansas City Court of Appeals where the judgment was reversed and the cause remanded.

[Starnes v. St. Joseph Ry., Light, Heat & Power Co., 22 S. W. (2d) 73.] Deeming its decision contrary to the previous decisions of the Springfield Court of Appeals in Paris v. Waddell, 139 Mo. App. 288, 123 S. W. 79, and Hilburn v. Insurance Company, 140 Mo. App. 355, 124 S. W. 63, and contrary to the decision of the St. Louis Court of Appeals in the case of Lehmann v. Hartford Fire Ins. Co., 183 Mo. App. 696, 167 S. W. 1047, the Kansas City Court of Appeals certified and transferred the cause to this court on its own motion, and it is now properly before us for all purposes. [Sec. 6, Am. of 1884, Art. VI, Constitution of Missouri.]

The petition pleads that on January 7, 1928, and prior thereto, plaintiff lived in St. Joseph and purchased electricity for lighting his home from the defendant; that on January 6, 1928, defendant's meter inspectors called at plaintiff's home and inspected the meter; that after such inspection, said inspectors claimed that the electric meter had been tampered with; that the electric current was cut off from plaintiff's home on January 6, 1928, at one P. M., and remained cut off until seven P. M. on January 7, 1928; that on January 7, 1928, plaintiff called at the defendant's office to inquire the reason for cutting off the electric current, and that while there, one of defendant's agents "while acting within the scope of his employment and in the actual performance of his duties thereof touching the matter in question in the presence and hearing of plaintiff and divers other persons, whose names are unknown to plaintiff, falsely, wantonly and maliciously spoke of and concerning the plaintiff the following false, malicious and defamatory words, to-wit:

"Yes, we removed that meter on account of your having tampered with the meter."

"You sure have."

"You or your family have."

"You are the only one that could put a hole in the meter, as it had been inspected, or some one of your family."

"You have been obtaining light, heat and electricity fraudulently, and we shall not turn the power on in your home until you deposit with us fifty dollars."

Defendant's answer contained a specific denial of the words alleged; admitted that plaintiff had been one of defendant's electric customers; alleged that the electricity furnished was intended to be measured through an electric meter; that said meter was inspected on January 5, 1928, and was found to have been damaged and tampered with since its last inspection, and after its installation; that on January 6, 1928, defendant removed said damaged meter; that plaintiff came to defendant's office and was informed that the meter was removed because it had been tampered with and damaged; that whatever was said by defendant's agent to plaintiff was said without

**48**

malice and only in an effort to explain to plaintiff the reason for the removal and the cost of installation of a new meter and safety switch.

█ Appellant's first point is that the court erred in refusing to sustain Instruction B, in the nature of a demurrer to the evidence; appellant contending that "there is no evidence that the slanderous words alleged in the petition and submitted in plaintiff's instruction were communicated to and understood by any one," and that "the words stated in the presence of plaintiff's wife (but not believed by her) are not the slanderous words alleged in the petition, and there is a consequent failure of proof." In ruling such a demurrer the evidence must be considered in the light most favorable to plaintiff, and for that purpose we quote as follows from the statement of the evidence appearing in the opinion of the Kansas City Court of Appeals:

"The evidence most favorable to plaintiff is to the effect that plaintiff is a railroad conductor who has lived at 3912 Terrace Avenue, St. Joseph, Missouri, since April, 1924. During the forenoon of January 6, 1928, two employees of defendant came to plaintiff's residence to inspect his electric meter. After the inspectors had been in the house about twenty minutes one of them asked the plaintiff if he knew anything about a hole in the meter and plaintiff answered:

" 'No, I don't.'

"The inspector then showed plaintiff a small hole in the meter and said:

" 'I'll have to report it.'

"The plaintiff told him to go ahead. Shortly thereafter the plaintiff was called to make his 'run' as a conductor. He left home at about 12:40 P. M., and returned about four o'clock the next day. When he returned he became apprised of the fact that defendant had cut off the current and that his wife had been in the house without lights all night. Whereupon, he went to the office of defendant, asked who he should see concerning the removal of the meter, and was told that he should see Mr. Ballard whose office was on the second floor of the building. He went to the second floor, a lady came to the counter and asked his business, and he answered that he would like to see Mr. Ballard. In a few minutes a gentleman stepped over to the counter and said that he was Mr. Ballard. Plaintiff said his name was Starnes and that he came to see why the meter was removed from his residence. Mr. Ballard answered: 'For the simple reason you have been tampering with it.' 'You have tampered with it.' Plaintiff said: 'You are mistaken, I have not.' Ballard answered, 'Yes, you have.' Plaintiff said: 'I haven't done nothing of the kind.' Ballard replied, 'You sure have or some one of your family,' and then he turned around and walked to a desk, opened a door and pulled out what plaintiff supposed to be the same meter,

took up a pencil and said: 'You put that hole in there, only one could put that hole in that meter. It had been inspected—or some one in your family.' Mr. Ballard also said: 'You have been obtaining power and light fraudulently and we will not turn it on until you deposit $50.' Plaintiff testified that he asked what the $50 was for and Mr. Ballard answered: 'For power you obtained fraudulently and installing a new meter and damage to the old meter.' Plaintiff said: 'I don't think it is right, I haven't done anything to the meter. Haven't tampered with it.' Mr. Ballard replied: 'Undoubtedly you have, the hole shows for itself.' Plaintiff testified that at the time of the conversation Mr. Ballard was waiting on a lady standing beside him, right beside the counter, and two or three other people were standing outside. Plaintiff was asked whether the other people could hear the conversation. He answered: 'They surely could, could hear it over the entire room.'

"Plaintiff testified that Mr. Ballard then signed a paper for the young lady and invited plaintiff into his office. They went into the private office of Mr. Ballard sat down and took out some papers and asked him to read them, and they pertained to the law for damaging meters. Plaintiff stated that he was not interested and hadn't tampered with the meter. Mr. Ballard told him that he had better read them, but when plaintiff said he didn't care to, Mr. Ballard said: 'I'll read this paragraph to you.' Plaintiff insisted that this was a waste of time because he was not interested; that he came to see about getting light for his house. Mr. Ballard finally said that the lights would be put back for $18, which was for installing a new meter, sealing the meter, $2 damages to the old meter; $15 for installing the new meter. Upon being told that that was the only way he would get light plaintiff deposited that amount under protest.

"There was evidence that Mr. Ballard stated in the private office that defendant had a record showing that three years ago his wife called in saying she had broken some seals. Plaintiff insisted that this was not so and that his wife had not called at the office. He stated that his wife was sitting in the car and that he would go down and ask her. Plaintiff then left the office and told his wife of this occurrence whereupon she came up to the office with the plaintiff and denied what had been said about her and at that time Mr. Ballard again said: 'You are the only ones that could put that hole in the meter. It was inspected when you moved in and it was impossible for them to overlook that hole.' "

Not only are the words last above quoted as coming from defendant's agent not the words alleged in plaintiff's petition to have been slanderously uttered against plaintiff, but it further appears from all the evidence that they were uttered at a different time and place from that alleged in the petition, in the presence and hear-

ing of no one except the speaker and the plaintiff and his wife, and were addressed to both the plaintiff and his wife. The wife, being thus accused jointly with her husband, was not a third party within the meaning of the law of publication. [Harbison v. Chicago, R. I. & P. Ry. Co., 327 Mo. 440, 37 S. W. (2d) 609, 616, 327 Mo. 440.] However, it is apparent from the foregoing statement of the evidence that the alleged slanderous words were spoken by defendant's agent to plaintiff out of the presence and hearing of his wife but in the presence and hearing of one or more third persons, and there was substantial evidence from which the jury might well conclude that such third person or persons heard and understood the words and knew that they were addressed to plaintiff in a defamatory sense. Section 4106, Revised Statutes 1929, provides that any one who shall knowingly accept and receive the use and benefit of electric current which should pass through a meter but has been diverted therefrom, or which has been prevented from being correctly registered by a meter provided therefor, or which has been diverted from the wires or conductors of a person, firm or corporation producing electricity for public or private use, shall be guilty of a misdemeanor punishable by fine or imprisonment or both. The words which plaintiff said were uttered could only mean that plaintiff had been guilty of the crime defined by this statute. Hence, they were defamatory *per se*. [Birch v. Benton, 26 Mo. 153, 159; Boyce v. Wheeler, 197 Mo. App. 295, 195 S. W. 84; 36 C. J. p. 1194, n. 54.] If, as plaintiff testified, they were spoken loud enough to have been heard by another person or persons standing nearby, the question of whether or not they were communicated to such person or persons was one for the jury under all the evidence (Priest v. Central States Fire Ins. Co., 9 S. W. (2d) 543, 223 Mo. App. 122; Frazier v. Grob, 194 Mo. App. 405, 413, 414, 183 S. W. 1083; Cameron v. Cameron, 162 Mo. App. 110, 114, 144 S. W. 171), and defendant's demurrer to the evidence was properly overruled.

Appellant's next two points are to the effect that the court erred in permitting plaintiff's counsel to say in his opening statement, and in permitting plaintiff to testify upon his direct examination that defendant had made an offer of compromise. These points will be considered together.

In the course of his opening statement before the jury one of plaintiff's counsel said: "After that a man named Harrington says 'we'll give your $18 back if you sign a release.'" Thereupon defendant moved the discharge of the jury and objected to the statement upon the ground that it was an attempt upon part of counsel to state to the jury an offer of compromise made by defendant. This objection was overruled. Plaintiff tes-

tified that after he had paid the $18 under protest he called at Mr. Harrington's office in the general offices of defendant and talked to him about the matter. Mr. Harrington had the meter brought in and after looking it over he said: "That hole could be very easily overlooked when they inspected it before. It is so small." After some conversation Mr. Harrington said he would look into the matter and thought he could refund plaintiff's $18. Later, Mr. Harrington told him by telephone that he could come up to the office any time he wanted to and get his money. Pursuant to this conversation plaintiff again called at the office of defendant and Mr. Ballard presented to him a form for his signature releasing the defendant from all damages. Thereupon plaintiff said: "I'll never sign that. I'll lose my $18. If you people feel that way I'll see what I can do." This testimony was objected to for the reason above stated and defendant moved to strike it out, but the objection and motion were overruled.

Defendant's offer to return the eighteen dollars in exchange for a full release from plaintiff was in terms an effort to compromise an existing difference, and plaintiff's above noted manner of refusal to accept plainly indicates he so understood it. Such negotiations for a peaceful settlement are to be encouraged, and in event they fail testimony with reference thereto should be excluded on a trial of the cause. The trial court should have sustained defendant's above objections and motion to strike out. [Jacks v. Link, 291 Mo. 282, 295, 236 S. W. 10; Sterrett v. Met. St. Ry. Co., 225 Mo. 99, 115, 123 S. W. 877; Smith v. Shell, 82 Mo. 215, 220; Bassett v. Moberly Paving Brick Co., 268 S. W. 645, 219 Mo. App. 81; Marshall v. Taylor, 168 Mo. App. 240, 247-9, 153 S. W. 527; Engel v. Powell, 154 Mo. App. 233, 238, 239, 134 S. W. 74.]

Counsel for appellant also insist that the trial court erred in giving instruction numbered one because it purported to cover the entire case and authorize a verdict but did not require the jury to find that the alleged slanderous words submitted in the instruction were heard and understood by a third person or persons. The only requirement in this instruction as to publication was that the alleged slanderous words should be found to have been maliciously spoken of and concerning the plaintiff "in the presence and hearing of plaintiff and divers other persons." An essential element of slander is "the communication of the defamatory matter to some third person or persons," and "the communication, whether it be in words or by signs, gestures or caricature, must be intelligible to such third person." [Newell on Slander and Libel (4 Ed.) sec. 175, p. 218, 219; Cameron v. Cameron, 162 Mo. App. 110, 114, 144 S. W. 171.] As said in 17 Ruling Case Law, section 56, page 316, "it is obvious that, as a rule, the words uttered must not only be started on their

way by the speaker, but that some person must have heard and understood them.'' [See, also, 36 C. J. p. 1227, sec. 180, c. n. 13; Nichols v. Ry. Co. (Mo. App.), 232 S. W. 275, 277; Frazier v. Grob, 194 Mo. App. 405, 415, 183 S. W. 1083; Walker v. White, 192 Mo. App. 13, 17, 18, 178 S. W. 254; Traylor v. White, 185 Mo. App. 325, 330, 170 S. W. 412.] We think it was not enough in this case to require the jury to find that the alleged slanderous words were uttered ''in the presence and hearing of plaintiff and divers other persons.'' The jury should have been required to find that such words were heard and understood by such other person or persons.

Inasmuch as this case will have to be remanded for a new trial it is perhaps well to suggest that in instruction one the above quoted words are preceded by the words ''while he was engaged in the course of defendant's business, and while acting within the scope of his employment and in the actual performance of his duties for the defendant, touching the removal of the meter mentioned in evidence from the plaintiff's premises.'' These are facts to be found by the jury and not assumed in the instructions.

Appellant also complains of the giving of instruction numbered four, requested by plaintiff, on the grounds that it ''assumes as a fact (1) that the alleged slanderous words were false, (2) that the alleged slanderous words were spoken by Ballard, (3) that Ballard was acting within the scope of his employment in the performance of his duties, (4) that the alleged slander was uttered in the presence of other persons, and (5) instructed the jury to believe the words to be false and untrue.'' The instruction is as follows:

''The court instructs the jury that if you find for the plaintiff you will assess his actual damages (if any) at such sum as would fairly and reasonably compensate him for all mental suffering and humiliation (if any) suffered by him by reason of the false words used by said Ballard at said time, while acting within the scope of his employment and in the actual performance of the duties thereof, touching the matter in question, and in the presence and hearing of plaintiff and divers other persons, and you believe that said words were false and untrue, and for all injuries to his good name and reputation, if any, naturally and directly caused by the utterance of said words.''

The foregoing instruction is only on the measure of damages in the contingency and on the hypothesis the jury first find for plaintiff. It contains no assumption of fact and is not open to any of the objections urged. [Powell v. Railroad, 255 Mo. 420, 453, 164 S. W. 628; Beall v. K. C. Rys. Co. (Mo. App.), 228 S. W. 834, 837; Burke v. Robinson (Mo. App.), 271 S. W. 1005, 1007.]

Objections were lodged against certain parts of the oral argument made by one of plaintiff's counsel to the jury on the ground that

such arguments were directed to removal of the meter instead of the alleged slander, and the court was asked to discharge the jury. The court admonished the jury to form its own opinion from the evidence and overruled the motion to discharge the jury. No reversible error was committed therein.

On account of the errors above noted the judgment is reversed and the cause is remanded for a new trial.

All concur.